The next matter, number 24-1330, Sine Phimmady v. Merrick v. Garland. At this time, would counsel for the petitioner please introduce himself on the record to begin? Good morning. Again, Edward Crane on behalf of Sine Phimmady. With the Court's permission, I would like to request one minute of rebuttal time. You may. Thank you. The critical question in this case is whether the BIA inexplicably departed from its settled course of adjudication in denying the petitioner's motion to reopen. To answer this question, the Court must first consider whether the BIA has a settled course of adjudication. It unquestionably does. The 90 BIA decisions cited by the petitioner establish as much. In each of these decisions, the BIA granted sui sponte reopening because the noncitizen established that the conviction underlying his or her removal order was vacated due to a defect in the criminal proceeding. This is the BIA's settled practice that it has established over the course of the past 20 years. It grants sui sponte reopening if the noncitizen is able to show that the conviction underlying his or her removal order was vacated due to a defect in the criminal proceeding. Is that true even when the person has been removed? It's not true when the person's been removed. I believe that's the exception to the rule. That's the one exception when the removal order has been executed. How do we know that's the only exception? I believe that to be the only exception based on my research, and the Court is certainly welcome to. The thing about just if we're trying to figure out what the agency means by exceptional circumstance. Yes. It would be one thing if there was some clear indication it thought a vacated conviction is inherently and necessarily always an exceptional circumstance. But it seems from their practice we know that's not true because otherwise it wouldn't take into account whether the person had been removed. So that just raises for me the question of how many other things does it take into account? And then it starts to seem more like Williams or a case like that rather than Thompson. Yes, certainly. And I think that the critical thing would be if there were other cases in the past 20 years where the Court looked at these other factors, looked at other things. So a non-citizen presents the fact that their conviction underlying their removal order has been vacated. And the Court looks at that and says, well, due to these other factors, it's not a truly exceptional situation here. Instead, the cases uniformly say that that is a truly exceptional circumstance. But, counsel, I think the difficulty is the government disagrees with you. And, you know, essentially what you're arguing is for us to determine is there a settled course and what exactly is it. We have to review all 90-some decisions that you've submitted. And the government's position is actually if you look at those, they don't really support the clear rule that you're arguing for. In some of the cases, the BIA talks about the totality of the circumstances, does a more holistic analysis, which is, I think, what Judge Behrens is suggesting. And then the government's, I think, primary argument, which I'd like you to respond to, is that in a lot of these cases, you don't actually have enough facts to really understand the basis for the BIA's ruling. So, you know, for instance, in a number of the decisions, it's hard to know if there was really a delay in the noncitizen seeking post-conviction relief, because you don't know if it's just that the post-conviction relief only became available on a certain date and then the noncitizen sought it, or it took a long time to get the relief, not that the noncitizen waited to start the process, but the process itself took a very long time. And so they say the cases are quite different from yours. So how do you respond to all the arguments the government makes about how, in fact, there are multiple factors being considered? Yes, well, I think that the lack of facts is actually indicative of the BIA's settled course of adjudication. The BIA does not discuss these facts because they're irrelevant to the BIA's consideration of whether a truly exceptional situation exists or not. But how do we know that's why they're not discussing them versus this is an unpublished set of decisions and in unpublished decisions, you know, judicial tribunals often don't provide the same level of explanation for their reasoning? Particularly when it's a totally discretionary decision. Yes, and I think that just the consistency of the decisions, the language used in the decisions, the number of decisions in which the court doesn't consider these other factors, doesn't note other facts. The only fact that appears to be relevant, looking at this at a broader scale, the only fact that appears to be relevant to the BIA over the past 20 years is whether the noncitizen has vacated the conviction underlying their removal or based on a defect in their criminal proceeding. I know the government says it's a constellation of factors and the BIA has used the totality of the circumstances, language in the past, but the reality is it's never actually really done that. It hasn't considered a constellation of factors. It hasn't looked at the totality of the circumstances. It's looked to this vacature of the conviction as really this positive factor. I mean, aren't there at least a few cases where the BIA, in fact, did look at diligence in pursuing post-conviction relief in deciding whether to exercise its discretion? Are you suggesting there's zero cases in that category of 90-plus that looked at it? There are cases. There's one case recently that was five months before my client's case, and then there were two other cases mentioned by the government. I believe that in both of those cases, though, the BIA discussed diligence in the context of equitable tolling, which is really a separate argument from sua sponte reopening. And in one of those cases, I believe it was the Grandoy case, the BIA concluded that the petitioner had diligently pursued post-conviction relief, and thus equitable tolling was applicable. And then another case, I believe, they concluded the opposite. Is it Thomas or Thompson? I forget. Thomas? Thompson. In Thompson, it's a little bit of a different situation, because there was a statute that says how you're supposed to treat a pardon conviction. And one thing that you could understand Thompson be trying to do is figure out, did you exercise the discretion or were you mistakenly thinking you didn't have the discretion? And you could imagine there that the subtle course of adjudication is going to the question of, did they make a legal mistake that kept them from exercising the discretion? So they never really exercised it. And the subtle course of adjudication is there trying to get a sense of, what did they think a pardon conviction was? If it's not a conviction at all, then we go and figure out, what do we do discretionarily with respect to a non-conviction? And they had kept saying, well, we treat legislative and executives the same. So that was their position. So then we know that now they've all of a sudden changed that view. That just strikes me as a very different type of thing, much more like the Lona type situation the Ninth Circuit was dealing with, than the idea you seem to be arguing for, which is, even as to a general standard, like exceptional circumstance, we just look at, notwithstanding the fact that it's a discretionary judgment, how have you been doing it over time? And then you can't change your mind. But the whole idea of it being subject to discretion, which the Ninth Circuit makes this point, is you get to change your mind without a whole lot of explanation. So what's your thoughts about that? Well, I think, standing alone, Thompson, it creates essentially this settled course of adjudication. But in a particular context where we were doing it with respect to how it construed a statutory term that would bear on whether there was a conviction at all. Yes. That's not the issue here. It's not as if the question is, was this a vacated conviction? Yes. And I think that this Court's decision in Bedos is further illuminating, though, on the extent of what settled course of adjudication review is. In Bedos, it's not the same. It is not a question of giving inconsistent interpretations. Is that a case involving a discretionary determination? Well, it's certainly a case. See, we have two different lines, and we combined them in Thompson. There's settled course of adjudication, which in a non-discretionary context is very standard administrative law. You can't just change your mind for no reason. But in the discretionary context, the whole idea is you can change your mind for no reason. So in Thompson, we then import it. The Ninth Circuit understandably says there's a little bit of a mismatch mixing those two things together. It recognizes, and arguably as Thompson recognizes, that there's sense in doing that, maybe for certain types of judgments. If we just apply it generally, doesn't it just kind of undermine the whole idea of what a discretionary decision is? Well, I mean, Thompson is a discretionary decision. This is a discretionary decision. Yes, but with respect to a particular construction of the statutory requirement as to what a conviction was at all. And, again, I think Bedos is critically important there because in that case it's really the Court does a settled course review, and it's not looking at, again, sort of statements of law. It's looking at the way that the BIA does things, the practice of the BIA. How does the BIA resolve things? And in Bedos, the BIA had a particular way of resolving motions to remand when they're unopposed. And I think essentially that's the same thing that we have here. It's not Thompson in that it's not inconsistent interpretations of a certain law, but it is inconsistent applications of a settled practice. So I would say that Bedos simply – I think what I'm still struggling with, though, is that when we have to look at a set of cases, and this is a large set of cases, if we just find a handful, which I disagree with you. I think there are some where the government is right and the BIA is clearly – I think one is a query that the BIA is clearly using the phrase totality of the circumstances and talking about record evidence indicating that the respondent diligently pursues rights. If we just find a handful that are inconsistent with your thesis, then how can we have a settled course of adjudication again when it is a discretionary decision and there's no affirmative rule that this is contradicting, right? Like if you're only right about 90 percent of them, what percentage do you have to be right about for your claim to succeed? Do you understand my question? I understand it. It's a good question. It's a very specific question. I mean, I understand the question to be essentially if we have, say, 95 percent of cases going one way and 5 percent going the other way. And it's a discretionary decision with no affirmative rule saying this factor is dispositive. So I guess if you're asking me where the number is, I would say it's somewhere along. I guess for this case, there are 90 cases that point in one direction, I would say, and then the government – I don't think that there are more than just that one case that was decided five months again before my client's case. I don't think there are any cases that really undercut the way that those 90 cases push. But certainly I think if there were more cases that – Because your view is that the right way to read the cases is that delay has not been a factor that makes it not exceptional. Severity is not something that – the only thing that hasn't ever made it not exceptional is if you're removed. Yes. Save for this one case five months ago. Yes. So the settled course is if you don't have a removed person and it's a conviction that's been vacated, then it doesn't matter – the reason why it was vacated doesn't matter how long the delay was and doesn't matter how serious the crime was. They've always granted it. There's no case not granting it, say, for five months ago. Yes. Yes. And I think with delay, it's particularly important to note that there are two cases where the BIA essentially overruled an IJ who denied sui sponte reopening because of a delay. Can I ask you – the government cites Jesus Munoz, which is a case where the petitioner was removed. But when you look at that case and you look at the analysis, it does seem to me that the government was right, that the judge was weighing the length of delay in filing the request and that the removal was referred to in a footnote that had nothing to do with the reasoning in that case. Could you address that? And I realize it's a super specific question, so I understand if you can't. It's tough because there's so many decisions here, obviously, to keep track of. Munoz was 2017. So I sort of – I was thinking a lot about what Judge Ruckelman is asking, too. How do you figure out what a course of adjudication is? Is it just the most recent cases? Is it a certain percentage if you have 10? But Munoz, which the government relies on, was relatively recent, 2017. And my position there would be that assuming that that case is a case where the BIA did take delay into consideration, that case and the one other case is not enough to disrupt the settled course of adjudication that the BIA established over the course of the past 20 years in all of these other cases. So it is an interesting question as to whether – look, there's – say the extreme hypothetical, 1,000 cases in which the BIA granted sui sponte reopening, yet then there's one case in which the BIA does the opposite. Does that disrupt the settled course of adjudication? I don't know where that line is drawn. When does it become sort of an inconsistency and the settled course can't be established? I would say that we haven't reached that point here with there being 90 cases pointing in one direction, and then I would say at best two cases pointing in the opposite direction. And again, I think generally just looking at the cases that have been cited, the BIA seems to be their general practice. I'll just ask it the other way just before we close. I take it you don't have a case with this length of delay, this severe of conduct, and the ground for vacating it was technical like this. You don't have a case like that where they had granted it. No, but we also don't have – I know. I just wanted to make that. I think it's important to note, too, that we don't have any cases where the BIA – there was a vacatur, and the BIA said even though there's a vacatur, due to the seriousness of this crime – We don't. We're not going to grant it, or due to this being a technicality, we're not going to grant it. But we've just got a confluence of factors here that we don't have a case quite like that before. I would say there's a paucity of cases, and really no cases, where the BIA does this sort of, I want to look at a constellation of factors, and one's going to be seriousness, one's going to be delay, one's going to be whether it was vacated based on technicality. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the government please introduce himself on the record to begin? Good morning. May it please the Court. Greg Mack for the Attorney General. Finality and repose. These deportation proceedings were over and finished nearly 30 years ago. In addition to a lack of jurisdiction, 90 disparate, idiosyncratic, unpublished decisions do not constitute a settled course of adjudication, and certainly don't support our position that the Court should overturn the Board's annulment of this motion to reopen. With respect to jurisdiction, and it wasn't raised on Petitioner's time, I'll just briefly say what Petitioner has presented is a classic factual dispute. He wants the Court to peer into the facts of these cases and say my facts are sufficiently similar to these other facts. That's a classic factual dispute that falls outside the Court's jurisdiction. And how do you distinguish Thompson? How do I distinguish Thompson? Well, Thompson, as your Honor pointed out, Thompson is clearly a discrete binary legal question. The legal question there was did the Board recognize pardons from non-legislative, excuse me, non-executive pardoning authorities? So you have a clear discrete binary legal question. You're not looking into the 90 different cases. So I'm trying to isolate what the problem is. Exceptional circumstance is not a legal standard, correct? Correct. It's just there. Well, let's start. There's no statutory requirement that they be covered by that. That's what I was just about to say. Let's start at 30,000 feet. Attorney General doesn't have to have sui sponte reopening whatsoever. It's in a regulation, but he could withdraw that regulation tomorrow. That's equally true in Thompson. It's equally true in Thompson, but at least you have the discrete binary legal question. Here you have a bunch of factual questions about whether his facts are the same. Well, I guess what I'm trying to figure out is why aren't the factual questions just whether this is an exceptional circumstance, which seems like that could be a legal standard. But to figure out whether it's an exceptional circumstance, you then have to parent all these different facts to figure out are his facts sufficiently similar to these other set of facts, and that's a classic factual dispute the Supreme Court has said. It's sort of like that, you know, exceptional hardship test, which I thought we've got case law suggesting that that is that Wilkinson. That's Wilkinson from the Supreme Court. That is a mixed question of fact and law, which would be what exceptional circumstance as applied to the facts. But still, even with Wilkinson, if there are disputed facts, there's no jurisdiction. There have to be undisputed facts that are applied to a legal principle in Wilkinson. That's not the case what we have here. He's saying my facts are sufficiently similar to all of these other sets of facts with respect to reopening when there's a vacated conviction. But what we have, and I think what we've demonstrated in our briefs, there's all sorts of facts going on. There's some facts that are stated. There's some facts that are not stated in all these 90-90 decisions. But, counsel, the actual facts of his, you know, conviction and when he sought post-conviction relief, those aren't disputed here. So why would it be inappropriate to say, well, if it were true that the 90 decisions or say there were only 10 or 20 decisions were all very clear in saying this is the key factor, the key factor is or isn't present, and therefore we reach such and such a decision, why would it be inappropriate for the court to actually review those decisions to decide if there's a settled course of adjudication based on those undisputed facts? Well, if they're undisputed, then the court has jurisdiction. But we're suggesting he's raising a classic factual dispute because But his facts, you don't dispute his facts. The question is just whether those facts qualify as an exceptional circumstance. But you have to compare his facts to those 90 different cases, and that's a classic factual dispute. I think what you're just saying is it's unclear what the exceptional circumstance test is. That just seems like a legal point. You might be right about that, but I don't see what it has to do with it being a factual dispute. I think it has to do with being a factual dispute because he's asking you to peer into all these 90 different cases to see whether his facts are sufficiently similar. And our briefing, I think, suggests to you that there's a whole set of facts that are and aren't mentioned. There's no dispute about the conviction when it was vacated. I don't think that shows that you're pointing out that he's making a factual dispute. I think you're just saying that we can't tell from those cases what their test for an exceptional circumstance is. Right, right. That's all we're saying. It's a classic factual dispute. That's not a jurisdictional problem. That's just he fails on the merits because we don't have a settled course of adjudication as to exceptional circumstances. And we just want to be clear that, again, this is an exceptional circumstances case where ordinarily the court lacks jurisdiction. That's what I think you're making, a jurisdictional point about why Thompson is different. Right. I guess what I'm suggesting is the ground you're distinguishing Thompson from doesn't make a huge amount of sense to me. But maybe there's a different one which relates to this being a binary legal point versus something else. And I'm trying to figure out what that something else is. Which is the point we made in the brief, is that Thompson is a binary legal question. And I'm just asking, why isn't this? It either is an exceptional circumstance or not. That's just binary. That's just like Wilkinson. Well, it's not like Wilkinson in the sense that he's trying to say that my facts are similar to these 90 other decisions. But, counsel, just for a moment, let's just posit that that's not what he's saying. Because that's not how I understood Petitioner's argument. His argument is if you actually read these decisions, you will see that only one factor matters. So, actually, you could argue it is binary. The only factor that matters is has the conviction been vacated. And if it has, it qualifies as an exceptional circumstance. So, if that's the argument, then why wouldn't there be jurisdiction here? Because that seems very similar. Because he's not presenting that discrete binary legal question that was in Thompson. He's saying my case is similar to these other 90 cases. And I think what we just demonstrated is vacater isn't the only variable in these other cases. But I think the stronger point that the government has been making is this isn't Thompson. Clearly, this isn't Thompson. We made two points in our brief. One is jurisdiction. The other one on the merits with respect to settled adjudication question. So, there's two grounds that you can get rid of the case. One is jurisdiction, which we've gone over for several minutes. The other one is simply on the merits. That we've shown in our briefing there are other variables other than vacater. The concern is that if we agree with you on settled course of adjudication, that applies way outside the discretionary context. And if we make a ruling about 90 cases that all look like they've been doing it one way, and yet that's not a settled course of adjudication, that has ramifications for the ability of the agency to be arbitrary outside the context of purely discretionary determination. And there does seem to be some force to the idea that there is no case until five months ago where there's a vacated conviction and the person hasn't been removed, where they say it's not an exceptional circumstance. So, that seems relatively settled. I would think outside the context of discretionary determination, we'd be pretty loath to just have an agency all of a sudden say, yeah, but we felt like doing it differently today. Well, I think, Your Honor, in looking at these facts, the board pointing to the egregious nature of the conviction and the lack of diligence in pursuing the relief. So, vacater wasn't the only principle that was going on with respect to the board's decision here. So, the through line that the petitioner... But wasn't there prior cases where it was a murder charge and they still went ahead and granted the relief as an exceptional circumstance? I think that was the Lika case that we pointed to. In the Lika case, the petitioner, as we noted in our brief, immediately went to direct and collateral attack on his conviction. So, there's an immediate jumping on and contesting of the conviction. So, you said there's no case where you've got all these factors together. Exactly, as you pointed out on petitioner's time. So, in our brief, we point out the Lika case, Lika immediately jumped on the contesting his conviction. This case, you don't have any sort of attack on the conviction in pursuing post-conviction relief or later this vacater motion with the State of Massachusetts. So, I think with respect to the settled course of the adjudication claim, what petitioner's pointing to is vacater is the only variable that the board considers. And because it departed from that consideration in this case, that's the reason to overturn the board. And I think what we've shown in our briefing, it isn't the only variable. We've pointed to several cases where the board pointed to diligence, lack of delay, lack of equitable tolling. So, you can't say that vacater is the only variable in this situation. And again, when you put that on top of this is an exceptional circumstance, this case with a court ordiner that doesn't have jurisdiction, the board appropriately exercised its discretion in this case to say, look, you have a nearly 30-year-old conviction that you're trying to reopen in this particular case. The State of Massachusetts, the Commonwealth, was hamstrung in pursuing further prosecution here. Because of that delay, now you're coming to the board trying to get another windfall to say, look, my case should be reopened because the Commonwealth could no longer pursue a prosecution here. Counsel, what is your position on the question I asked Petitioner's Counsel, which is as long as you just give us two or three cases that don't follow his thesis, is that enough in your view to show a lack of a settled course of adjudication? I think so, because Thompson again points to this legal question, and he's saying I've got 90 cases and there's only three or four. It's not a percentage inquiry that the board is performing. And I think also with respect to the egregious nature of the conviction, that has to be taken into account by the board. And I think also it's not in the government's briefing, but Petitioner doesn't tell you what is the universe from which these 90 cases were taken from. And I can certainly submit to the court later when I get back to Washington, the board is looking at tens of thousands of cases over these years, and he's pointed to 90 cases where the board has reopened. That is not the entire universe in which the board is looking at these motions to reopen, particularly when they're untimely. I see my time's expired. We ask the court to dismiss or deny the petition. Thank you. Thank you. Thank you, counsel, at this time. Counsel, for the Petitioner, please reintroduce himself on the record. He has a one-minute rebuttal. Good morning. Edward Crane on behalf of CINFM 80. Finality is important, but so is consistent application of the rule of law. This is what happened here. The BIA had a settled practice that it followed for 20 years. New appointees to the BIA did not like that practice, and they decided to unilaterally change that practice. That's what's happening here. That's not fair. My client, you know, I was very surprised when I received this decision from the BIA, because I looked into this. When my client first hired me, I told him about this practice the BIA has. We went through this whole process because the BIA has a settled practice, and we thought that we could rely on it, and that he would ultimately be able to obtain relief based on this settled practice. And, you know, I was surprised, but then I was angry because I looked into it, and the standard that's applied to my client had never been applied to any other previous noncitizens. The BIA hadn't looked into egregiousness of the conduct, hadn't looked into the delay, hadn't looked into whether the conviction was based on an immigration warning issue. So that was ‑‑ I just have to emphasize that essentially what the BIA is doing here is it had a settled practice. It's unilaterally changing that practice. I don't think that's fair. If the BIA wants to change this practice, no one judge should be able to go against the practice. They should have to get together and actually announce that they're changing their practice. Thank you. Thank you, counsel. That concludes argument in this case.